Fickis *v.* Pennsylvania Paving Company, Appellant.

Argued November 21, 1933.

Before KELLER, CUNNINGHAM, BALDRIGE, STADT-
FELD and JAMES, JJ.

*D. Malcolm Hodge* of *Hannum, Hunter, Hannum &*
*Hodge,* and with him *Robert B. Greer,* for appellant,
cited: Watts v. Borough of Plymouth, 255 Pa. 185;
Frye v. Washington Township, 291 Pa. 240.

*Matthew Rankin* of *Geary & Rankin,* for appellee,
cited: Wood v. Bridgeport Borough, 143 Pa. 167;
Bloomsburg Steam, etc. Company v. Gardner, 126 Pa.
80; Douglass v. Monongahela City Water Company,
172 Pa. 435.

OPINION BY BALDRIGE, J., February 1, 1934:
The plaintiff brought this suit to recover damages
for injuries sustained by falling into a trench left

open by defendant company in constructing a sewer in the bed of 7th Street from Tilghman to Howell Streets, in the city of Chester. A verdict was rendered for the plaintiff in the sum of $1,272.50. This appeal followed.

The facts as produced by plaintiff are as follows:

On the evening of September 28, 1929, about 8:30, the plaintiff was proceeding north on Tilghman Street, intending to go to his home on 8th Street. When he reached 7th Street, where there was a 75-watt electric light, he saw a big pile of dirt and two red lanterns. Instead of passing around the dirt, which he said he could have done, and continuing across 7th Street, he turned to his right and walked on the sidewalk eastwardly along the trench. He saw, as he proceeded, the dirt piled on the southerly side of the street to a small plank bridge across the trench, where there was a red lantern. Plaintiff originally fixed this point at 150 feet east of Tilghman Street. He continued to Broomall Street, an unopened highway a square and a half from Tilghman Street, where there was a big pile of dirt on the sidewalk, with a red lantern thereon. Then, according to his original testimony, he retraced his steps to a point 18 feet from the small bridge and 121 feet from Norris, another unopened street a square from Tilghman Street; here there was a large electric light. The following day, when plaintiff was recalled to the stand, he said that the bridge was 70 feet from Tilghman, and that he attempted to cross the street 71 feet from the bridge, or 151 feet from Tilghman Street. Before entering the cartway, he looked, but owing to the darkness, did not see any dirt or the trench. After taking 5 or 6 steps he fell into the 4-foot-wide opening.

In Watts v. Plymouth Borough, 255 Pa. 185, 188, 99 A. 470, the plaintiff received an injury while attempting to cross over the main street

in the borough of Plymouth at a point alongside the track of a street railway occupying the middle of the street where she intended to board an approaching car. This was not a scheduled stopping place, but cars were allowed to stop at that point, on signal, to receive passengers. The plaintiff left the street opposite the point where she expected to take the car, carrying three packages of merchandise in her right arm and a pail with her left hand. Her inability to see what was immediately before her was not due, however, to those encumbrances, but to the darkness. She proceeded into the cartway and fell, sustaining injuries of which she complained. Mr. Justice STEWART, in delivering the opinion of the court, said: "Pedestrians are not restricted to the use of established street crossings when they attempt to pass from one side of the street to the other. They have a right to cross at whatever point they elect. But, since it is matter of common knowledge that crossings where they exist have been constructed for their exclusive accommodation and use, and that the individual pedestrian is less exposed to accident in using the crossing than when he attempts to cross the street elsewhere, it is only reasonable to expect him to use the crossing, except as he has sufficient ground to reject it. When without reasonable excuse he does reject it and adopt another way, he takes upon himself the risk of every danger arising out of municipal neglect that would have been avoided had he used the established crossing. The rule of law governing in such case is thus stated by Judge DILLON in his work on Municipal Corporations, Section 1008: 'Street crossings are constructed for the use of foot passengers; but if these happen to be obstructed or to be in such a dangerous condition as to deter an ordinarily prudent man from using them, then one may walk elsewhere. If he does so, however, without suffi-

cient reason, and is injured, his injury can not be imputed to the negligence of the city.' ''

The learned court below was of the opinion that the case at bar is distinguished from that case, in that the plaintiff "did attempt to explain or to give a reason for his attempt to cross at a point other than the established crossing." We think his explanation is entirely inadequate. The crossing was available to the plaintiff and there is nothing to indicate that its use was attended with any danger. It was not obstructed in the sense that it was barred or blocked so that the public could not safely use it. It could hardly be said that he was subjected to even an inconvenience. The trench ended at Tilghman Street, and all that was necessary for him to do was to divert slightly his pathway and go around this pile of dirt. There was no averment or proof that a dangerous condition existed to deter an ordinarily prudent man from using this crossing. We are not unmindful that usually the question whether or not the excuse offered for rejecting a crossing is reasonable or otherwise is for the jury. But, as was said in Watts v. Plymouth Boro., supra (p. 189), "where no reason at all is expressed, and no conclusion is derivable from the facts and circumstances of the case, except that the choice of way was inconsiderately and negligently made ...... it is the duty of the court to so pronounce." Here the excuse offered was no real reason for the plaintiff's not continuing his way home on Tilghman Street. The presence of the red lights, which the plaintiff admitted were at three places along the ditch, and the piles of dirt from the 7th Street corner to the temporary plank crossing, and the accumulation of dirt at Broomall Street, were sufficient to warn him that work was being done on the street. The conditions that existed were notice to him to use reasonable precaution before attempting to cross the street between

the red lanterns in darkness so pronounced that he could not see the trench. He knew that either the temporary bridge, a short distance away, or 7th and Tilghman Streets, afforded him a safe place to cross. But, instead of using either of these places, and for no sufficient reason other than to avoid returning to Tilghman Street, he chose the risk of following no defined pathway, when it was so dark that he could not see. He assumed the dangers of such action, and having taken his chance, he must abide the consequences.

After giving the plaintiff the benefit of every fact or reasonable inference of fact, favorable to his contention, and rejecting every alleged fact or inference of fact, unfavorable to him (Jamison v. Kamerer, 313 Pa. 1, 2, 169 A. 231), we find he was guilty of contributory negligence.

Judgment is reversed and is now entered for defendant.